IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MORGAN SHEPHERD,

      Petitioner,

v.                                   Case No.: 2:16-cv-06669

DAVID BALLARD, Warden,
Mount Olive Correctional Complex

      Respondent.

**PROPOSED FINDINGS AND RECOMMENDATIONS**

      Pending before the Court are Petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF No. 2), Respondent's Motion to Dismiss, (ECF No. 9), and Petitioner's Motion for Stay and Abeyance, (ECF No. 17). This case is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having thoroughly reviewed and considered the record, the undersigned **FINDS** that Petitioner failed to exhaust his state court remedies as to some of his claims; thus, he prematurely filed his petition for a writ of habeas corpus in this Court. However, the undersigned further **FINDS** that Petitioner is entitled to a stay and abeyance of the petition while he exhausts his state remedies. Therefore, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** Petitioner's request for a **STAY**; **DENY**, without prejudice, Respondent's Motion to Dismiss; and hold Petitioner's

habeas petition in **ABEYANCE** pending exhaustion of his state court remedies. In light of the timeliness concerns reflected in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, the undersigned further **RECOMMENDS** that the District Judge condition a stay and abeyance on Petitioner pursuing his state court remedies within **thirty (30) days** of the date that the order to stay is entered and require Petitioner to return to federal court within **thirty (30) days** after he has exhausted his state court remedies.

## I.   Relevant Facts and Procedural History

### A.  State Proceedings

In July 2000, Petitioner was convicted of the first-degree murder of his wife in the Circuit Court of Logan County, West Virginia and sentenced to life imprisonment without the possibility of parole. (ECF Nos. 2 at 1, 9-5 at 2). Petitioner filed a direct appeal in the Supreme Court of Appeals of West Virginia (SCAWV). (ECF No. 9-1). As relevant to the instant matter, Petitioner argued in his direct appeal that the prosecutor obtained an indictment in his case by presenting to the grand jury "a blatantly wrong standard of proof" for first-degree murder, which he stated directly affected the grand jury's decision to indict him. (ECF No. 9-1 at 18-19). However, the SCAWV refused Petitioner's direct appeal on November 7, 2001. (ECF No. 9-2).

On May 15, 2002, Petitioner filed a *pro se* petition for a writ of habeas corpus in the circuit court. (ECF Nos. 9-4 at 8 and 9-5 at 3). Thereafter, he filed additional *pro se* pleadings and was appointed several different attorneys to prosecute his state habeas action. (*Id.*). For reasons that cannot be ascertained from the available documents, on October 28, 2002, Petitioner filed a motion asking the circuit court not to set aside his amended *pro se* petition. (ECF No. 16-2).

On March 31, 2004, the circuit court entered an order directing Petitioner, by counsel, to file an amended habeas petition stating all grounds that counsel believed to be meritorious, as well as all grounds that Petitioner directed counsel to include on habeas review; if, upon review and consultation, Petitioner and counsel elected to not present any additional grounds, they were to file a certification to that effect. (ECF No. 16-3 at 1-2). Petitioner was further directed to complete and file a *Losh* checklist.[1] (*Id.* at 2-3).

On April 9, 2008, Petitioner filed another *pro se* amended habeas petition. (ECF No. 16-13 at 4). Eventually, in July 2009, the circuit court appointed attorney Lonnie C. Simmons to represent Petitioner in his state habeas proceeding. Mr. Simmons identified that the transcript of Petitioner's criminal trial did not include a transcript of the court's instructions to the jury, and he began efforts to obtain an accurate transcript of the jury instructions. (ECF No. 16-14 at 4). On November 17, 2011, Mr. Simmons filed an amended petition on Petitioner's behalf. (ECF No. 16-12 at 1). The following month, on December 8, 2011, Petitioner filed a *pro se* supplement to counsel's amended petition. (ECF No. 16-12 at 1).

On April 8, 2012, Mr. Simmons received a transcript of the trial court's instructions to the jury, among which State's Instruction No. 13 provided that if the jurors had reasonable doubt as to any of the elements of first-degree murder then they shall find Petitioner not guilty of murder in the *second degree.* (ECF No. 16-14 at 4) (emphasis added). Petitioner supplemented the circuit court record in his state habeas action with the transcript of Instruction No. 13. (ECF No. 16-12 at 1).

On June 12, 2012, the circuit court held a hearing in which Mr. Simmons requested

---

[1] A *Losh* checklist is a list of all alleged trial errors that is filed by a petitioner in a state habeas proceeding. *See Losh v. McKenzie,* 277 S.E.2d 606 (W.Va. 1981).

that the court set a summary judgment briefing schedule on the amended habeas petition. (ECF No. 16-4). Later that month, on June 22, 2012, the circuit court entered a scheduling order directing the parties to file proposed findings of fact and conclusions of law. The circuit court also set a hearing on November 1, 2012. (ECF No. 16-12 at 1).

At the November 1, 2012 hearing, the circuit court advised Mr. Simmons that Petitioner still needed to file a *Losh* checklist. (ECF No. 16-5 at 15). The circuit court went on to explain that the purpose of the *Losh* list was to resolve all habeas issues at one time and prevent petitioners from coming back to court, piecemeal, with new issues. (*Id.* at 16). The court expressed its intention "to get an omnibus proceeding so all of the issues Petitioner wants raised can be addressed." (*Id.*). The parties also discussed the problem with the transcript of Petitioner's trial, noting that Day VI of the transcript was missing, which included the jury instructions. They agreed to share a back-up tape of Day VI prepared by the court reporter, file supplemental memoranda, and supply proposed findings of facts and conclusions of law. The circuit court gave the parties 30 days to supplement their written filings, and indicated that if the parties did not request additional oral argument, the record would be closed and the court would issue a ruling. (*Id.* at 18). During this hearing, Mr. Simmons focused only on the jury instruction error. Mr. Simmons claimed that State's Instruction No. 13 contained a fundamental error as to the elements of first-degree murder, which warranted a new trial. (ECF No. 16-5 at 4-5). As he later explained, he wished to receive a ruling on that "dispositive issue," while preserving the other issues for a future proceeding, if necessary. (ECF No. 16-14 at 5).

According to Petitioner, he and Mr. Simmons exchanged various correspondence from November 2012 through January 2013. Petitioner states that he wrote a letter to Mr. Simmons on November 12, 2012 asking him to raise grounds two and three of his *pro se*

habeas petition in an amended habeas petition. (ECF No. 16-13 at 5). Petitioner claims that he also wrote Mr. Simmons on December 26, 2012 asking him to move for experts, investigate his case, and raise any valid issues. (ECF No. 16-13 at 5). Petitioner contends that Mr. Simmons responded by letter on January 9, 2013, asked Petitioner to write to him at his earliest convenience to advise if Mr. Simmons should include "these things" in the petition in order to file the *Losh* checklist. (ECF No. 16-13 at 5).

Finally, on January 14, 2013, Petitioner allegedly wrote counsel again inquiring about hiring a forensic examiner to listen to the trial tape and produce an "official record." (ECF No. 16-13 at 5-6). He stated that he wanted to make sure that all of his issues were raised in an amended petition. (*Id.* at 6). Petitioner further wrote to Mr. Simmons, stating that he did indeed want to pursue the issues that he raised *pro se*, but with some additional communications and investigations, they might be able to pare down some of the issues. (*Id.*). He asked Mr. Simmons to move for a writing expert to examine his "original alleged statement." (*Id.*). He also wanted to "file for the withheld evidence," including bullets, photographs, clothing, crime scene video and "have a hearing on the irregularities in the evidence." (*Id.*).

On January 16, 2013, Mr. Simmons filed a Reply on Petitioner's behalf, stating that counsel rested on the grounds raised in the amended petition and Petitioner, on his own, moved for the Court to consider the issues raised in his *pro se* amended petition filed April 9, 2008. (ECF No. 16-6). Mr. Simmons filed Petitioner's *Losh* checklist, which raised several of Petitioner's *pro se* grounds. (ECF No. 9-3 at 10). Mr. Simmons also filed an "Objection," stating that Petitioner only completed the *Losh* checklist because he was required to do so by the Court and he in no way knowingly and intelligently waived any issues. (ECF No. 16-6 at 5).

On July 3, 2013, Mr. Simmons filed a notice of complete record. (ECF No. 16-7 and 16-9). Days later, on July 9, 2013, Petitioner filed a *pro se* request for permission to file a *Motion for Ballistic Expert* and supplement to his April 9, 2008 *pro se* petition, stating that he was now in the position to receive his full and fair omnibus hearing . (ECF No. 16-8).

In response, on August 8, 2013, the circuit court wrote a letter questioning Mr. Simmons about the status of Petitioner's case, referencing that the court received a *pro se* supplement to the amended habeas petition. (ECF No. 16-13 at 8). On October 21, 2013, Petitioner filed a motion for status update, inquiring about counsel's response to the letter and asking about the status of the motion for experts and the status of the court ordering a full and fair omnibus hearing to make sure that Petitioner is represented by counsel on his *pro se* issues. (*Id.* at 9). On November 11, 2013, Mr. Simmons wrote to Petitioner telling him that the decision regarding the completeness of the record was up to Petitioner. (*Id.*). Petitioner responded on November 13, 2013, allegedly stating he did not want to waive all of the issues that he raised *pro se* and requested that counsel inform the court that the record was not complete. (ECF No. 16-13 at 9).

In February 2015, Mr. Simmons noticed a status conference to take place on March 17, 2015. (ECF No. 16-11). However, prior to that date, the circuit court canceled the hearing and entered a final order dated March 13, 2015. (ECF No. 9-3). As relevant to the unexhausted claims in this action, the circuit court denied Petitioner's claim that his trial counsel was ineffective for not moving to bifurcate the guilt and mercy stages of his trial. (ECF No. 9-3 at 8-9). The circuit court also denied Petitioner's claim that he was denied due process based on errors in the trial transcript, which Petitioner argued prevented an appeal. (*Id.* at 10). The court further acknowledged that Petitioner raised several grounds

in his *Losh* list filed on January 16, 2013 that were not previously raised in his amended petition filed by counsel. (*Id.*). The circuit court stated: "Petitioner has not offered evidence or legal argument and has waived any other claims for relief other than those raised in his January 16, 2013 pleading or at hearing, therefore the Court concludes that the Petitioner has failed to prove and waived all other grounds for relief raised in the January 16, 2013 pleading, and his claims for relief on those grounds are DENIED." (*Id.* at 11) (emphasis in original).

On March 25, 2015, Mr. Simmons moved to amend the final judgment on Petitioner's behalf pursuant to Rule 60(b) of the West Virginia Rules of Appellate Procedure, stating that the circuit court's order failed to acknowledge Petitioner's *pro se* filings and incorrectly asserted that he waived all other issues. (ECF No. 16-12). Shortly thereafter, on April 13, 2015, Petitioner filed a *pro se* motion asking the circuit court to stop or stay its final order denying the habeas petition. (ECF No. 16-13 at 2-15). He advised that he urged his counsel to develop and argue various grounds that he raised *pro se*, but counsel declined to do so. (*Id.*). He further stated that he was unaware of the circuit court's statement during the November 1, 2012 hearing that only the three grounds in the amended petition filed by counsel were before the court; he stated that he never agreed to only pursue those grounds. (*Id.* at 12). He requested the appointment of new habeas counsel and an omnibus hearing. (*Id.*).

Also on April 13, 2015, Mr. Simmons filed on Petitioner's behalf a notice of appeal of the circuit court's habeas ruling in the SCAWV. (ECF No. 16-14). One of the issues raised in Petitioner's appeal was that the trial court erred by ignoring all of the issues that Petitioner raised *pro se*; counsel contended that he made clear at the November 2012 hearing that he was focusing only on the erroneous jury instruction claim because it was

dispositive and he was preserving all other issues if Petitioner received an unfavorable ruling on summary judgment. (ECF Nos. 9-4 at 19-21 and 16-14 at 11). He added that the trial court erred in ruling on any other grounds because they had not been briefed or argued by counsel and Petitioner was not given the opportunity to have a hearing in which he could assert all claims that he wished to assert. (*Id.*). Petitioner argued that if the SCAWV did not find that the alleged error in the jury instructions warranted habeas relief, then the SCAWV should remand the case to permit Petitioner to make a record on the undeveloped issues raised by counsel and the issues Petitioner raised *pro se*. (*Id.* at 21).

On April 8, 2016, the SCAWV issued a memorandum decision affirming the circuit court's denial of Petitioner's state habeas petition. (ECF No. 9-5). The SCAWV found no merit to Petitioner's argument that the trial court erred in ruling on grounds for which Petitioner's counsel had not yet made a record or that it denied Petitioner the opportunity to pursue all of the issues raised. (*Id.* at 6-7). The SCAWV stated that counsel chose to take a "narrow approach" at the November 2012 "omnibus hearing" by arguing only one of the grounds for relief, rather than presenting all of the issues raised in the various pleadings that had been filed. (*Id.* at 7). Therefore, citing *Losh*, the SCAWV stated that the circuit court committed no error by refusing Petitioner the additional opportunity to present claims that he chose to not present at the hearing. (*Id.*).

On May 9, 2016, Mr. Simmons filed a Petition for Rehearing in the SCAWV under Rule 25 of the West Virginia Rules of Appellate Procedure. (ECF No. 9-6). Counsel again focused on the jury instruction issue, arguing that the jury was not presented with the option of acquitting Petitioner of first-degree murder, and stating that the SCAWV finding was in error. (*Id.* at 6-7). Counsel also argued that the SCAWV's finding that the circuit court committed no error by refusing Petitioner the opportunity to present the claims that

he did not present at the omnibus hearing was error because Petitioner never had an omnibus habeas corpus hearing. (*Id.* at 8). On June 2, 2016, the SCAWV refused the Petition for Rehearing. (ECF No. 16-1 at 2). Eight days later, on June 10, 2016, the SCAWV issued a mandate pursuant to Rule 26 of the West Virginia Rules of Appellate Procedure, making the judgment final in his state habeas action. (ECF No. 16-1 at 3).

### B. Federal Action

On July 25, 2016, Petitioner filed the instant *pro se* petition for federal habeas relief under § 2254.[2] (ECF No. 2). He asserts that he filed this action on the advice of his state habeas counsel. (ECF Nos. 16 at 18, 17 at 3). Respondent filed an answer and a contemporaneous motion to dismiss the petition, along with a memorandum in support of the motion to dismiss. (ECF Nos. 8, 9, and 10). Respondent argues that Petitioner failed to exhaust the majority of the claims presented in his federal petition. (*Id.*). Accordingly, Respondent seeks dismissal of the petition without prejudice so that Petitioner can return to state court regarding the unexhausted claims. (*Id.*). Respondent posits that Petitioner's action should not be stayed and held in abeyance because at the time that Respondent filed the Answer and Motion to Dismiss, on October 14, 2016, Petitioner still had 221 days remaining of the 365-day period to file a federal habeas petition. (*Id.*).

On November 18, 2016, Petitioner filed numerous documents in opposition to Respondent's Motion to Dismiss. He argues that all of his claims are exhausted because they are incorporated into Ground Two of his federal petition, which is identical to

---

[2] Pursuant to the "prison mailbox rule," Petitioner's petition was filed upon delivery to prison officials, as opposed to the date that it was received and filed by the clerk of court. (ECF No. 2-1); *see United States v. McNeill*, 523 F. App'x 979, 981 (4th Cir. 2013) ("pro se litigant's legal papers are considered filed upon 'delivery to prison authorities, not receipt by the clerk.'") (citing *Houston v. Lack*, 487 U.S. 266, 266, 108 S. Ct. 2379, 2380, 101 L. Ed. 2d 245 (1988)).

Ground B of his state habeas appeal.[3] (ECF Nos. 14 at 1, 15 at 1). Nevertheless, he states that if the Court deems there are unexhausted grounds, it should grant a stay and abeyance. (ECF No. 15 at 2). Despite Respondent having filed an Answer, Petitioner also argues that the Court should deny the Motion to Dismiss because it is not a responsive pleading and cannot be filed in lieu of an Answer in habeas proceedings. (ECF No. 14 at 2). Petitioner is emphatic that he never abandoned any of his claims, but instead "assiduously and perspicuously" presented them to the state courts. (ECF No. 15 at 1-2 and 16). Petitioner maintains that his habeas counsel was "adamant" about the fact that all grounds were before the circuit court, including his *pro se* issues; however, the circuit court ruled on only the claims raised by counsel without Petitioner ever having the opportunity to develop his other challenges. (ECF No. 15 at 6).

Petitioner argues that a stay and abeyance is appropriate in his case because he will be time-barred from returning to federal court if his state proceeding is dismissed; further, he claims that he made every attempt to exhaust his claims in state court, but was foreclosed from doing so due to ineffective habeas counsel and to the state courts. (ECF No. 17 at 8-9). Petitioner asserts that his unexhausted claims are constitutionally "realizable" and meritorious claims and declares that he is not engaging in dilatory tactics. (*Id.*). He requests that this Court appoint counsel for him to file an amended state habeas petition, appoint a different circuit judge to preside over his second state habeas case, instruct the circuit court to hold an omnibus hearing to adjudicate all grounds, set a specified number of days/months for the circuit court to finalize the second habeas proceeding, and require quarterly reports from Petitioner or his counsel "to oversee the

---

[3] These identical grounds allege that Petitioner's constitutional rights to due process and equal protection were violated by the circuit court ruling on his undeveloped claims and "ignoring" his *pro se* issues on which Petitioner had not made a record.

Circuit Court is adjudicating ALL Grounds."[4] (*Id.* at 9-10).

## II.  <u>**Standard of Review**</u>

Respondent filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), based on Petitioner's failure to exhaust state remedies for some of the claims contained in his petition. (ECF No. 9). Respondent filed an answer concurrently with the motion to dismiss. Therefore, the motion technically should be considered as one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). However, the distinction makes no practical difference as the same standard of review applies to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), and both motions may be filed in § 2254 actions. *Id.* at 138-39.

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nevertheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a § 2254 case must consider "the face of the petition and any attached exhibits." *Walker*,

---

[4] The undersigned notes that the Court cannot grant these specific grounds for relief. Title 28 U.S.C. § 2254(a) empowers federal courts to inquire into the legality of custody of a person detained "pursuant to the judgment of a State court." The sole ground of inquiry is whether the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* Notably, § 2254 does not confer any authority to the federal court to order state courts to conduct habeas proceedings in a certain manner or otherwise authorize federal courts to direct the course of state proceedings.

589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. *Id.*

### III.  <u>Exhaustion</u>

As a prerequisite to filing a § 2254 proceeding, a habeas petitioner must exhaust his state remedies. 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must fairly present the federal constitutional issues to the state courts and allow them "one full opportunity" to resolve the issues. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). In West Virginia, exhaustion is accomplished in one of three ways: by (1) presenting the federal constitutional issues directly to the SCAWV through an appeal of the conviction or sentence; (2) filing a petition for a writ of habeas corpus in the appropriate circuit court followed by an appeal of the judgment to the SCAWV, if the result is adverse; or (3) filing a petition for a writ of habeas corpus under the SCAWV's original jurisdiction and receiving a dismissal with prejudice. *Moore v. Kirby*, 879 F. Supp. 592, 593 (S.D. W. Va. 1995); *Bayerle v. Godwin*, 825 F. Supp. 113, 114-15 (N.D. W. Va. 1993); *McDaniel v. Holland*, 631 F. Supp. 1544, 1545-46 (S.D. W. Va. 1986); *see also Gardner v. Plumley*, No. 2:12-cv-03386, 2013 WL 5999041, at *5 (S.D. W. Va. Nov. 12, 2013).

Given that the purpose of exhaustion is to ensure that the state has "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights," *Picard*, 404 U.S. at 275 (internal quotations omitted), fair presentation requires that the state courts be fully informed of "'both the operative facts and the controlling legal principles.'" *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (quoting *Matthews v.*

*Evatt*, 105 F.3d 907, 911 (4th Cir. 1997)). While it is unnecessary to cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (internal citations omitted). Instead, the petitioner must present the "substance of a federal habeas corpus claim" to the state courts. *Picard*, 404 U.S. at 278.

In general, a district court may not review a federal habeas petition unless there has been "total exhaustion" of the presented issues. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). Therefore, when a petitioner has failed to exhaust his state court remedies, a federal habeas petition should be dismissed. *See Preiser v. Rodriguez*, 411 U.S. 475, 477 (1973). In the event that a federal habeas petitioner presents a "mixed petition" consisting of both exhausted and unexhausted claims, the district court may (1) dismiss the petition in its entirety; (2) order a stay and abeyance while the petitioner exhausts his claims in state court; or (3) allow the petitioner to remove the unexhausted claims and proceed with the exhausted claims. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). The court may also deny the unexhausted claims on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(2); *see also White v. Keller*, No. 1:10-CV-841, 2013 WL 791008, at *5 (M.D.N.C. Mar. 4, 2013).

"The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state court proceedings." *Rose,* 455 U.S. at 518. While the exhaustion requirement is not jurisdictional, it should be strictly enforced. *Id.* at 522. Accordingly, a federal court may only excuse the exhaustion barrier when "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the

applicant." 28 U.S.C. § 2254(b)(1)(B). Moreover, these statutory exceptions apply "only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981).

Where a state court would refuse to hear a claim due to a petitioner's failure to observe a state procedural rule, the claim is considered exhausted because there is "an absence of available State corrective process." *See, e.g.*, *Rose v. Lee*, No. 7:07-cv-00003, 2007 WL 2050823, at *3 (W.D. Va. July 12, 2007) (citing *Teague v. Lane*, 489 U.S. 288, 298 (1989)); *see also Coleman v. Thompson*, 501 U.S. 722, 732 (1991) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."); *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006) ("State remedies are exhausted when the petitioner does not have the 'right under the law of the State to raise, by any available procedure, the question presented.'") (quoting 28 U.S.C. § 2254(c)); *Villot v. Varner*, 373 F.3d 327, 337 (3d Cir. 2004) ("[W]hen the state refuses to consider the merits of the prisoner's claims because the petitioner has failed to comply with the state's procedural requirements, his claim is nonetheless technically exhausted because 'there is an absence of available State corrective process'") (quoting 28 U.S.C. § 2254(b)(1)(B)(i)). Although such claims are technically exhausted, they are subject to the procedural default doctrine in any subsequent federal habeas proceeding. *See Clagett v. Angelone*, 209 F.3d 370, 378 (4th Cir. 2000) ("If claims were not exhausted in state court but would now be procedurally barred if brought in state court, then federal courts can treat the claims as if they were procedurally defaulted in the state courts."). The procedural default doctrine prevents a federal court from hearing a claim that has been, or would be, disposed of on

"adequate and independent state-law grounds, unless the petitioner can show cause and prejudice for, or a fundamental miscarriage of justice resulting from, failure to comply with the applicable rule." *See Bostick v. Stevenson*, 589 F.3d 160, 164 (4th Cir. 2009).

## IV. <u>Discussion</u>

The undersigned agrees that Petitioner has failed to exhaust three of the grounds presented in his § 2254 petition. First, Petitioner never presented to the SCAWV Ground Three of his § 2254 petition in which he argues that he was denied his constitutional right to due process because the trial transcript contains omissions and errors of vital importance, which he contends created an inadequate record for appeal and habeas corpus proceedings. (ECF No. 2 at 12). This ground was listed in Petitioner's amended habeas petition in circuit court, but state habeas counsel, Mr. Simmons, evidently elected not to argue or develop it, because he was reserving it and all other grounds until the circuit court ruled on Petitioner's erroneous jury instruction claim. (ECF Nos. 9-3 at 10, 9-4 at 20, and 9-6 at 8). Mr. Simmons found the jury instruction claim to be dispositive of the habeas petition and reasoned that a favorable ruling would thereby moot all of the other claims. To that end, he intended to preserve all of Petitioner's other habeas claims for presentation to the circuit court if Petitioner did not receive relief based upon the faulty jury instruction. (*Id.*).

Nonetheless, the circuit court denied this claim for relief, finding that Petitioner only identified one error in the trial transcript, which was amended at his request, and that "any error in the transcription was harmless." (ECF No. 9-3 at 10). Petitioner's counsel did not appeal the circuit court's denial of this claim on the merits. Rather, Petitioner's appeal presented a separate and fundamentally different argument; that being, that the circuit court should not have ruled on that claim or any of the other claims

that were not ripe for decision. (ECF No. 9-4 at 19-20). In response, citing syllabus point 1 in *Losh*, the SCAWV found that the "circuit court committed no error by refusing petitioner additional opportunity to present the claims that he chose to not present at the omnibus hearing." (ECF No. 9-5 at 7). Therefore, while the SCAWV affirmed the circuit court's decision to rule on the claim, the SCAWV did not review the claim on the merits or make a finding as to whether Petitioner's right to due process was violated based on alleged errors in the trial transcript.

"To exhaust state remedies, a habeas petitioner must *fairly present the substance of his claim* to the state's highest court. *Holmes v. Ballard*, No. 3:13-CV-97, 2014 WL 1516305, at *9 (N.D.W. Va. Apr. 17, 2014) (citing *Matthews v. Evatt,* 105 F.3d 907 (4th Cir.1997), cert. denied, 522 U.S. 833 (1997)). Further, the petitioner's claim on federal habeas review must be the exact same claim that he raised in the state proceedings. *Id.* at *10 (citing *Pitchess v. Davis,* 421 U.S. 482, 487 (1975)). Here, Petitioner, by counsel, only argued in his appeal to the SCAWV that the circuit court erred in its post-conviction proceeding by ruling on this and other undeveloped claims, but he did not appeal the circuit court's substantive decision on the claim. Therefore, Petitioner's due process claim relating to the trial transcript was not presented "face-up and squarely" to the SCAWV, and there is no indication from the SCAWV's decision that it considered it substantively. Accordingly, Petitioner did not fully exhaust this claim.

Likewise, Petitioner did not present to the SCAWV Ground Four of his federal petition, which includes eight sub-claims that his trial counsel was constitutionally ineffective. (ECF No. 2 at 14-15). Petitioner asserted various claims of ineffective assistance of counsel ("IAC") in his amended habeas petition in the circuit court. See (ECF No. 9-3 at 7-10). However, he did not assert the same claims that he raises in his federal

petition with the exception of one claim that his trial counsel was constitutionally ineffective because he did not move to bifurcate the guilt and mercy stages of the trial. (*Id.* at 8-9; ECF No. 2 at 15). The circuit court ultimately found that Petitioner was not deprived of any state or federal right due to counsel not requesting bifurcation. (ECF No. 9-3 at 9). However, again, instead of appealing this issue, Petitioner's counsel argued on appeal that the circuit court should not have ruled on this issue, because it was undeveloped in the habeas proceeding. (ECF No. 9-4 at 19-21). As noted above, the SCAWV rejected this argument. Like the preceding trial transcript claim, the SCAWV never considered the merits of Petitioner's IAC claim relating to the issue of bifurcation. Further, Petitioner's other seven IAC claims raised in his federal petition were never presented to the SCAWV. Therefore, Petitioner's Ground Four is unexhausted.

Finally, Petitioner did not fully exhaust Ground Five of his federal petition, which alleges that his right to a fair trial and right to remain silent were violated due to prosecutorial misconduct. (ECF No. 2 at 16). In his direct appeal, Petitioner raised one of his allegations that the prosecutor used false or misleading testimony to obtain an indictment in his case. (ECF No. 9-1 at 16-19). However, the records before the Court do not show that the rest of Petitioner's allegations within Ground Five were presented to the SCAWV in his direct appeal or on habeas review. (ECF Nos. 9-1 and 9-4). Therefore, this ground is not fully exhausted.

Finding that the foregoing claims are unexhausted, the undersigned considers whether such claims are procedurally barred. West Virginia's "post-conviction habeas corpus statute, W.Va. Code § 53–4A–1 *et seq.* ... clearly contemplates that a person who has been convicted of a crime is ordinarily entitled, as a matter of right, to only one post-conviction habeas corpus proceeding during which he must raise all grounds for relief

which are known to him or which he could, with reasonable diligence, discover." Syllabus Point 1, *Gibson v. Dale*, 319 S.E.2d 806, 808 (1984); *see Markley v. Coleman*, 601 S.E.2d 49, 53 (2004). Grounds that were not raised in direct appeal or state habeas proceeding are deemed waived "when the petitioner could have advanced, but intelligently and knowingly failed to advance" them. W. Va. Code § 53-4A-1(c). When a petitioner fails to raise grounds in his direct appeal or habeas proceeding, there is "a rebuttable presumption that the petitioner intelligently and knowingly failed to advance such contention or contentions and grounds." *Id.*

In this case, there is a rebuttable presumption that Petitioner is procedurally barred from raising his unexhausted claims in state court. He was appointed counsel and failed to raise or appeal his unexhausted claims in his state habeas proceeding. Further, as previously noted, the circuit court stated in its decision on Petitioner's habeas petition that any grounds not raised in his January 2013 *Losh* list or at his hearing were waived. (ECF No. 9-3 at 10-11). There is no indication that Petitioner's motions to amend or stay the circuit court's judgment were successful. Further, Petitioner, by counsel, challenged in his habeas appeal the fact that the circuit court ruled on claims that were undeveloped and ignored his *pro se* claims. (ECF No. 9-4 at 19-21). The SCAWV held that the circuit court did not err by ruling on the claims. (ECF No. 9-5 at 7). In addition, Petitioner unsuccessfully petitioned for a rehearing, stating that he never had an omnibus hearing and now that the circuit court denied his claim relating to jury instructions, he was entitled to have an omnibus hearing and develop the issues that he had raised *pro se*. (ECF No. 9-6 at 8 and 16-1).

Thus, as a general matter, Petitioner would be forever barred from asserting his unexhausted claims at the state level. However, there is a narrow exception that might

allow Petitioner to return to state court to pursue such claims. In *Losh v. McKenzie,* 277 S.E.2d 606 (W.Va. 1981), the SCAWV recognized a narrow exception to the procedural bar in which ineffectiveness of state habeas counsel allows a West Virginia state court to reach the merits of a claim contained in a second state habeas petition. Syllabus Point 4, *Losh*, 166 W. Va. at 762–63, 277 S.E.2d at 608 ("A prior omnibus habeas corpus hearing is res judicata as to all matters raised and as to all matters known or which with reasonable diligence could have been known; however, an applicant may still petition the court on the following grounds: ineffective assistance of counsel at the omnibus habeas corpus hearing ...). Further, the SCAWV is clear that in order for a petitioner to waive habeas claims, it must be "knowing and intelligent [...] in the vein of a waiver of a constitutional right, which cannot be presumed from a silent record." Syllabus Point 1, *Gibson*, 173 W. Va. at 684, 319 S.E.2d at 808. Accordingly, "[b]efore the failure to advance contentions in a habeas corpus proceeding will bar their consideration in subsequent applications for habeas corpus relief, the record must conclusively demonstrate that the petitioner voluntarily refrained from asserting known grounds for relief in the prior proceeding." Syllabus Point 2, *Gibson*, 173 W. Va. at 684, 319 S.E.2d at 808.

Here, Petitioner asserts that his state habeas counsel was ineffective and that he was severely prejudiced by his counsel's misapprehension that his claims were preserved for later argument and development. Thereby, because of the circumstances of this case, Petitioner might have an avenue to file a successive habeas petition and have his unexhausted claims considered at the state level. In fact, Respondent agrees that Petitioner "may still have a basis from which to allege his unexhausted claims in State court." (ECF No. 8 at 3).

In a recent West Virginia circuit court case, a petitioner filed a second habeas action on the basis that, *inter alia*, his habeas counsel in his first state proceeding was ineffective and that certain grounds for relief in his first habeas petition were improperly denied due to counsel's ineffectiveness. *Widmyer v. Ballard*, No. 14-0355, 2015 WL 3688211, at *3 (W. Va. May 15, 2015). The circuit court ordered the State to respond on the issues and held an evidentiary hearing. *Id.* In another recent case, a petitioner filed a second *pro se* petition for a writ of habeas corpus which "raised various constitutional claims, several of which petitioner failed to raise in his initial habeas appeal, as well as those claims that were denied in his initial habeas petition." *Lind v. Ballard*, No. 14-0116, 2015 WL 5125884, at *1 (W. Va. Aug. 31, 2015). Nevertheless, the circuit court conducted an omnibus hearing in the matter. *Id.* The circuit court "found that the failure of petitioner's counsel to file an appeal from the final order entered in petitioner's first habeas proceeding constituted ineffective assistance of counsel." *Id.* Therefore, "[i]n the interest of allowing petitioner a full and thorough review, the circuit court allowed [the] petitioner to present evidence on all errors asserted in his amended habeas petition, including those that the circuit court denied in his initial habeas proceeding." *Id.*

Although neither of the above petitioners was ultimately successful in obtaining habeas relief on the second habeas petition, these and other cases support the existence of "a reasonable possibility" that Petitioner can file a second habeas petition in state court based upon his allegation of ineffective assistance of habeas counsel. "If *any reasonable possibility* exists that the state court may apply an exception to its procedural default rule, the federal court should not apply a state procedural bar to find that exhaustion is futile." *Meadows v. Legursky*, 904 F.2d 903, 909 (4th Cir. 1990), *abrogated on other grounds by Trest v. Cain*, 522 U.S. 87 (1997) (emphasis added).

The undersigned is mindful of the fact that Petitioner, proceeding *pro se* and by counsel, implored the circuit court and SCAWV for the opportunity to advance the issues which he argues were never developed or ignored in his first habeas proceeding, yet all efforts were thwarted. However, the state courts have never been presented with the question of whether Petitioner's habeas counsel was ineffective. This distinction is critical, as it is one of the narrow exceptions to *res judicata* and waiver in West Virginia habeas cases. Petitioner's counsel made a choice to advance only certain claims in Petitioner's first proceeding; by counsel's own admission, this was due to his belief that the remaining claims could be raised later. Instead, the circuit court denied the habeas petition without all of Petitioner's claims being developed and, in some cases, without being considered at all. Therefore, Petitioner has a viable gateway to pursue habeas relief in state court.

Given Petitioner's contention that his unexhausted claims are a result of ineffective assistance of state habeas counsel, the undersigned finds that a reasonable possibility exists that the state court may address the unexhausted grounds on the merits. Accordingly, exhaustion need not be excused under § 2254(b)(1)(B), and the procedural default doctrine need not be applied to Petitioner's claims at this point in the proceedings.

Having concluded that Petitioner presents both exhausted and unexhausted claims in his petition, without establishing any applicable exception to the AEDPA's exhaustion requirement, the undersigned considers whether it is appropriate for the Court to deny the unexhausted claims on the merits; dismiss the petition in its entirety, without prejudice; order a stay and abeyance while the petitioner exhausts his claims in state court; allow the petitioner to remove the unexhausted claims and proceed with the exhausted claims; or consider the claims *de novo. Rhines,* 544 U.S. at 277–78,; 28 U.S.C. § 2254(b)(2); *see also White,* 2013 WL 791008, at *5.

Addressing the latter options first, Petitioner does not argue that the Court should consider his claims *de novo*. In fact, he clearly requests that the Court issue a stay and abeyance in his federal action so that he can exhaust the claims in state court, in the event that the Court determines that some of his claims are unexhausted. (ECF No. 17). As discussed, Petitioner does not appear to be procedurally barred from raising his unexhausted claims in state court. *See Losh*, 166 W. Va. at 768, 277 S.E.2d at 611; *Gibson*, 173 W. Va. at 684, 319 S.E.2d at 808. Although the state courts repudiated his previous efforts for relief, Petitioner has not presented the state courts with his claim of ineffective assistance of habeas counsel. The principle of comity dictates that Petitioner, as a convicted and sentenced state prisoner, must fairly present his unexhausted federal constitutional claims to the state courts first and permit them the opportunity to address them, if he has an available avenue to do so. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999). Therefore, the undersigned **FINDS** that this Court should not consider Petitioner's unexhausted claims *de novo*.

Regarding the option of denying the unexhausted claims, the undersigned cannot conclude that Petitioner's unexhausted claims are plainly meritless. Having reviewed the § 2254 petition, the unexhausted claims relate to critical aspects of Petitioner's conviction and sentence, particularly including ineffective assistance of trial counsel and prosecutorial misconduct. The arguments raised by Petitioner are not facially frivolous. Moreover, Petitioner maintains that his state habeas counsel failed to effectively develop the record for his unexhausted claims. After examining the state habeas materials supplied by the parties, the undersigned is not in a position to definitively determine that Petitioner's contentions lack *potential* merit. If the state court agrees with Petitioner regarding the ineffectiveness of his state habeas counsel, then that court should be

permitted to develop the necessary record for the unexhausted claims. Thus, the undersigned **FINDS** that the Court should not deny Petitioner's unexhausted claims on the merits.

As to the remaining options stated above, the undersigned **FINDS** that a stay and abeyance is proper in this case. Stay and abeyance is only appropriate in limited circumstances in which the district court determines that "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005) ("Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.") In *Rhines*, the Supreme Court provided little guidance as to what constitutes good cause in the context of stay and abeyance, but cautioned:

> AEDPA's 1-year limitations period "quite plainly serves the well-recognized interest in the finality of state court judgments." It "reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review." AEDPA thus encourages petitioners to seek relief from state courts in the first instance by tolling the 1-year limitations period while a "properly filed application for State post-conviction or other collateral review" is pending. This scheme reinforces the importance of *Lundy's* "simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court."
> ...
> Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.

*Id.* at 276-77 (citations omitted).

Notwithstanding this warning, the Supreme Court acknowledged the potential problems posed by requiring dismissal of mixed petitions while enforcing the AEDPA's 1-year statute of limitations, noting that "[i]f a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it ... after the limitations period has expired, this will likely mean the termination of any federal review." *Id.* at 275. For that reason, the Court hesitated to state an inflexible rule. *Id.* at 279 (Stevens, J., concurring) ("[G]ood cause for failing to exhaust state remedies more promptly ... is not intended to impose the sort of strict and inflexible requirement that would trap the unwary *pro se* prisoner.") (internal markings and citation omitted). Since its decision in *Rhines*, the Supreme Court has offered one example of good cause, albeit in *dicta*. In *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005), the Court stated that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court" before exhausting his state court remedies. Some courts have interpreted *Pace* to require a broad interpretation of the good cause requirement set forth in *Rhines*. *See, e.g.*, *McCrae v. Artus*, No. 10-CV-2988, 2012 WL 3800840, at *8 (E.D.N.Y. Sept. 2, 2012).

The Fourth Circuit has yet to precisely define what constitutes good cause under *Rhines.* However, this Court found that a stay was appropriate where a petitioner had only thirty-nine days from the date of the Proposed Findings & Recommendations ("PF&R") to file a state habeas petition, which would toll the AEDPA's statute of limitations, and then return to federal court under the AEDPA's one-year statute of limitations. *Carter v. Ballard*, No. 2:14-cv-11952, 2015 WL 966127, at *12 (S.D. W. Va. Mar. 4, 2015). The time constraint, in conjunction with the petitioner's "confusion

regarding the availability of relief in state habeas proceedings, [and] his claims of ineffective assistance of [state appellate] counsel," amounted to good cause in the stay analysis. *Id.* Similarly, in *Elswick v. Plumley*, this Court found that a stay was warranted where the petitioner alleged his state habeas counsel was ineffective, he lacked any legal knowledge, and he would "have no future opportunity to return to federal court" if the petition were dismissed. No. 2:14-cv-29300, slip op. at 21-22 (S.D. W. Va. May 1, 2015) (ECF No. 18). Further, the undersigned recently found good cause for a stay and abeyance in light of the complex procedural issues arising in the case, the petitioner's allegations of ineffective assistance of state habeas counsel, the possibility that the petitioner's ability to obtain federal habeas relief would be jeopardized if his petition was dismissed, and the State of West Virginia's acquiescence to a stay. *Clement*, 2015 WL 6690158, at *12.

Other federal courts differ on how stringently to define good cause in the context of stay and abeyance. *See Provencio v. Chrones*, No. 06-1760, 2007 WL 1299967, at *2-*6 (S.D. Cal. Apr. 30, 2007) (collecting cases containing various definitions for good cause standard); *Williams v. Hurley*, No. 2:05-cv-985, 2006 WL 1650771, at *10 (S.D. Ohio June 6, 2006) (report and recommendation discussing various definitions applied and noting that some courts have adopted standard for cause applicable to procedural default while other courts have declined to do so); *compare Landeck v. Allen*, No. 3:14-CV-88, 2014 WL 5410630, at *4 (E.D. Va. Oct. 22, 2014) (recognizing that standard should not be "inordinately demanding") *with Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008) (declining to adopt "broad interpretation" of good cause because such interpretation would undermine goals of AEDPA). As a result, federal courts have also disagreed as to what constitutes good cause in the stay analysis. *Compare Long v. Ballard*, No. 2:13-cv-26, 2013 WL 6858415, at *6 (N.D. W. Va. Dec. 30, 2013) (finding

that good cause did not exist to grant stay where petitioner argued that any subsequent federal habeas petition would be time barred), *with Smith v. Wolfe*, No. PJM-10-2007, 2011 WL 4548315, at *6 (D. Md. Sept. 27, 2011) (granting stay rather than dismissing without prejudice where any subsequent federal habeas petition would be time barred), *Murray v. Perry*, No. 3:06-CV-51, 2007 WL 601494, at *5 (N.D. W. Va. Feb. 22, 2007) (magistrate judge recommending stay where any subsequent federal habeas petition would be time barred), *and Clement v. Blair*, No. 06-00351, 2007 WL 57782, at *3 (D. Haw. Jan. 5, 2007) (recognizing that "impending expiration of [AEDPA's] statute of limitations does constitute good cause."); *compare Newman v. Lempke*, No. 13-cv-531, 2014 WL 4923584, at *3 (W.D.N.Y. Sept. 30, 2014) (recognizing ignorance or confusion about law may constitute good cause), *and Provencio*, 2007 WL 1299967, at *5 (report and recommendation finding that ignorance of law and reasonable confusion as to whether state court habeas petition would be timely satisfied good cause standard), *and Riner v. Crawford*, 415 F.Supp.2d 1207, 1211 (D. Nev. 2006) (holding that good cause exists where petitioner can "show that he was prevented from raising the claim, either by his own ignorance or confusion about the law or the status of his case, or by circumstances over which he had little or no control"), *with Jackson v. Baenen*, No. 12-cv-00554, 2012 WL 5988414, at *2 (E.D. Wis. Nov. 29, 2012) (holding ignorance of law does not constitute good cause), *and McIntyre v. Quarterman*, No. 3-09-cv-0574, 2009 WL 1563516, at *3 (N.D. Tex. June 2, 2009) (same); *compare Blake v. Baker*, 745 F.3d 977, 983 (9th Cir. 2014) (holding ineffective assistance of counsel during state habeas proceedings may constitute good cause for a stay), *and Rhines v. Weber*, 408 F. Supp. 2d 844, 849 (D.S.D. 2005) (same), *with Edwards v. Thaler*, No. 3:10-CV-0006-M, 2011 WL 4056299, at *2 (N.D. Tex. Aug. 15, 2011) (finding that ineffective assistance of state habeas counsel did

not support finding of good cause for stay), report and recommendation adopted by 2011 WL 4074330 (N.D. Tex. Sept. 12, 2011), *and Carter v. Friel*, 415 F. Supp. 2d 1314, 1317-18 (D. Utah 2006) (recognizing split of authority as to whether ineffective assistance of post-conviction counsel constitutes good cause and concluding that it does not).

Turning to the relevant facts in the good cause analysis, the undersigned finds that the AEDPA's one-year statute of limitations is expired pursuant to 28 U.S.C. § 2244(d)(1)(A). The SCAWV refused Petitioner's direct appeal on November 7, 2001. (ECF No. 9-2). Petitioner had 90 days within which to file a petition for a writ of certiorari in the Supreme Court of the United States. He did not do so; thus, his judgment of conviction became final on the day following the expiration of the 90-day period. *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) ("If no petition for a writ of certiorari is filed in the United States Supreme Court, then the limitation period begins running when the time for doing so—90 days—has elapsed."); *Hernandez v. Caldwell,* 225 F.3d 435, 439 (4th Cir. 2000) (Under Federal Rule of Civil Procedure 6(a), the one-year limitation period commences the day after the event triggering the period.). The one-year AEDPA statute of limitations ran for 97 days until the day before Petitioner filed a state habeas petition on May 15, 2002, which tolled the period. *See* (ECF No. 2 at 3); *Hill*, 277 F.3d at 704 ("The running of the one-year limitation period, however, is suspended for '[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.'") (citing 28 U.S.C.A. § 2244(d)(2)). The SCAWV issued a mandate making Petitioner's state habeas decision final on June 10, 2016. (ECF No. 16-1 at 3); *See* W. Va. R. App. P. 26(a). The one-year period resumed running the following day, on June 11, 2016, and expired in March 2017.

Notably, the one-year period was not tolled by the filing of Petitioner's federal petition in July 2016. *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) ("We hold that an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2). Section 2244(d)(2) therefore did not toll the limitation period during the pendency of respondent's first federal habeas petition."). Therefore, the one-year AEDPA period has clearly expired. Consequently, if the Court dismissed this action without prejudice so that Petitioner can return to state court to exhaust his claims, he would be time-barred from seeking federal habeas relief absent a finding of equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010) (AEDPA's statutory limitations period may be tolled for equitable reasons). The undersigned finds that the untimeliness of any future federal habeas petition, as well as Petitioner's allegation that his failure to exhaust was due to ineffective state habeas counsel, weighs in favor of a stay and abeyance in this case. *See, e.g., Samples v. Ballard*, No. 2:13-CV-11638, 2014 WL 1342312, at *11 (S.D. W. Va. Mar. 31, 2014) (citing *Adams v. McBride,* 3:06–cv–0382, 2009 WL 3187209, at *1 (S.D. W. Va. Sept. 30, 2009) (this court granted a stay and held the petitioner's federal habeas petition in abeyance where it seemed clear that dismissal would undoubtedly result in petitioner's inability to timely seek federal habeas relief); *Carter*, No. 2:14-cv-11952, 2015 WL 966127, at *12.

As for the second consideration in assessing the propriety of a stay, the undersigned concludes, as stated above, that Petitioner's unexhausted claims are *potentially* meritorious. Therefore, this consideration also weighs in favor of staying Petitioner's case. Finally, with regard to the third element set forth in *Rhines*, there is no reason to believe that Petitioner has engaged in "intentionally dilatory litigation tactics."

*Rhines*, 544 U.S. at 278. To the contrary, Petitioner was diligent in seeking relief from his convictions, first on direct appeal, then in his state habeas proceeding, and finally, in expeditiously filing this federal action. Moreover, since filing in this Court, Petitioner has been actively engaged in the process. Accordingly, the undersigned **FINDS** that Petitioner satisfies the three requirements for the issuance of a stay under *Rhines*. For the aforementioned reasons, and in light of the fact that Respondent's only argument in opposition to a stay and abeyance is that there was significant time remaining of the one-year period at that time, which is no longer the case, a stay and abeyance is the most appropriate option available to this Court.

## V.     <u>Proposal and Recommendations</u>

For the forgoing reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** the following**:**

1.   Petitioner's request for a stay and abeyance, (ECF No. 17), be **GRANTED**;

2.   Respondent's Motion to Dismiss, (ECF No. 9), be **DENIED, without prejudice,** as premature;

3.   Petitioner be **GRANTED** a **STAY** so that he may pursue his state court remedies for his unexhausted claims and that the stay be conditioned on Petitioner pursuing his state court remedies within **thirty (30) days** of the date that the order to stay is entered; and

5.   Petitioner's habeas petition be held in **ABEYANCE** pending exhaustion of state court remedies, and Petitioner be required to return to federal court within **thirty (30) days** after he has exhausted his state court remedies and seek to lift the stay.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code,

Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Copenhaver, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner, Respondent, and counsel of record.

**FILED:** May 2, 2017

Cheryl A. Eifert
United States Magistrate Judge